13-4161-cv
National Railroad Passenger Corporation v. McDonald

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: August 27, 2014          Decided: February 24, 2015)

Docket No. 13-4161-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NATIONAL RAILROAD PASSENGER CORPORATION,

    Plaintiff-Appellant,

    v.

JOAN MCDONALD, COMMISSIONER, THE NEW YORK STATE DEPARTMENT OF TRANSPORTATION,

    Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before: WINTER, RAGGI, and CARNEY, Circuit Judges.

    Appeal from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, Judge), denying appellant's motion for summary judgment on the ground that New York's taking of appellant's land by eminent domain was barred by federal law and granting appellee's motion for summary judgment on grounds of Eleventh Amendment immunity and statute of limitations. We affirm on statute-of-limitations grounds.

                            KATHLEEN M. SULLIVAN (Christopher E. Kulawik, on the brief), Quinn Emanuel Urquhart & Sullivan, LLP,

New York, NY, for Plaintiff-Appellant.

CECELIA C. CHANG, Special Counsel (Barbara D. Underwood, Solicitor General, Andrew W. Amend & Mark H. Shawhan, Assistant Solicitors General, of counsel), on the brief for Eric T. Schneiderman, Attorney General of the State of New York, for Defendant-Appellee.

WINTER, Circuit Judge:

The National Railroad Passenger Corporation ("Amtrak") appeals from Judge McMahon's grant of summary judgment dismissing its federal Supremacy Clause claims brought against Joan McDonald, Commissioner of the New York State Department of Transportation (the "Commissioner"). Amtrak's complaint claimed that, in light of federal statutes that organize and regulate Amtrak, the Supremacy Clause of the United States Constitution deprived the New York State Department of Transportation ("NYSDOT") of authority to condemn Amtrak's property by eminent domain. Because Amtrak brought its federal claims more than six years after its claims accrued, the action was time-barred. We therefore affirm.

BACKGROUND

The relevant facts are undisputed.

Amtrak is a private corporation created by the Rail Passenger Service Act of 1970, 49 U.S.C. § 24101 et seq., to operate intercity commuter rail service throughout the United

States. See 49 U.S.C. §§ 24101(a); 24301(a)(2). In furtherance of its objectives, Amtrak owns and uses real property, much of which was conveyed to it pursuant to the Regional Rail Reorganization Act of 1973. See 45 U.S.C. § 701 et seq.

The NYSDOT is currently engaged in a project called the Bronx River Greenway, involving joint federal and state efforts to convert a 23-mile-long stretch of land along both sides of the Bronx River into urban parkland. Part of the planned Greenway adjoins Amtrak's Northeast Corridor rail lines. In the course of carrying out the project, NYSDOT determined that it needed to build on several parcels of land owned by Amtrak. The Commissioner sought to acquire the land by eminent domain under the authority given her by the New York State Highway Law, N.Y. High. Law §§ 22, 30 (McKinney 2004), and the Eminent Domain Procedure Law ("EDPL"), N.Y. Em. Dom. Proc. Law § 101 et seq. (McKinney 2004).

Before resorting to eminent domain, NYSDOT contacted Amtrak and attempted to negotiate the purchase of the land and easements it needed. As a result, beginning in 2001, NYSDOT and Amtrak communicated for several years about the Greenway project's need for the land in question. However, a stalemate resulted. Although Amtrak was willing to sell the land to New York, it demanded indemnification from all potential environmental cleanup liability and the right to pre-approve NYSDOT's entering and

1  working on the land.  NYSDOT did not make the desired
2  concessions.
3       In April 2005, NYSDOT began proceedings under the EDPL to
4  condemn the properties.  In accordance with EDPL §§ 202-203,
5  NYSDOT published notices of a public hearing.  It also notified
6  Amtrak officials that the hearing would occur on May 19, 2005.
7  On May 11, 2005, Roger Weld, a NYSDOT employee, called and
8  emailed a regional Amtrak official, Earl Watson, and notified him
9  of the hearing.  Watson, in turn, forwarded the NYSDOT email to
10 the Amtrak personnel with authority to act in eminent domain
11 cases, namely the Project Director of Real Estate Development --
12 Sheila Sopper -- and the legal department.  However, NYSDOT's
13 EDPL-mandated notice was sent to an erroneous address for Amtrak,
14 not at the statutory address where Amtrak is to receive service
15 of process.  See 49 U.S.C. § 24301(b); N.Y. Em. Dom. Proc. Law §§
16 202-03.
17      On May 19, 2005, NYSDOT held the public hearing as
18 scheduled.  No one from Amtrak attended, and Amtrak did not
19 submit written comments.  Subsequently, on August 17, 2005,
20 NYSDOT published the determinations and findings necessary for
21 condemnation of the land.  See N.Y. Em. Dom. Proc. Law § 204.
22 Amtrak could have challenged the condemnation under the EDPL's
23 judicial review provision, see id. § 207, but did not.  As it
24 conceded at oral argument, it could also have brought the present

4

action. Instead, from 2005 through 2008, it continued to discuss the Greenway project with NYSDOT.

Meanwhile, in 2007 and 2008, NYSDOT sent Amtrak notice that it planned to condemn six parcels and made an offer of compensation. On February 19, 2008, the Commissioner filed notices of appropriation and maps with the county clerk. When those documents were filed, title to the land vested in New York state. Id. § 204; see id. § 402(A)(3). A year and a half later, on August 13, 2009, Sopper sent NYSDOT "agreement of sale" documents that proposed to sell the land and easements for the same price as the compensation proffered by NYSDOT but also provided for Amtrak's pre-approval of construction and for indemnification for environmental liability. On August 28, 2009, NYSDOT responded that it had already acquired title to the parcels by eminent domain. Nearly two and a half years later, on April 9, 2012, Amtrak brought the present action claiming that the takings were invalid under the Supremacy Clause as expressly or impliedly preempted by federal law. Joint App. at 8-22.[1]

The district court held that Amtrak's Supremacy Clause claims against the Commissioner were barred under the Eleventh Amendment. Nat'l R.R. Passenger Corp. v. McDonald, 978 F. Supp. 2d 215, 245 (S.D.N.Y. 2013). Alternatively, it held them time-

---

[1] Condemnation proceedings for one parcel are not yet completed, but the district court's dismissal on time-bar grounds applies to that parcel as well.

5

barred, because Amtrak brought suit over six years after it knew or should have known that it had a claim. Id. at 242 & n.1. We affirm on statute-of-limitations grounds.

## DISCUSSION

We review de novo whether the Commissioner was entitled to summary judgment. See, e.g., Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003). Summary judgment is appropriate only where there are no issues of material fact and the movant is entitled to judgment as a matter of law. Id. We may affirm on any ground with support in the record. McElwee v. County of Orange, 700 F.3d 635, 640 (2d Cir. 2012).

As noted, the district court proffered alternative rationales for dismissing Amtrak's claims: sovereign immunity under the Eleventh Amendment and the time-bar of the relevant statute of limitations. Nat'l R.R. Passenger Corp., 978 F. Supp. at 235, 242 & n.1.

The Eleventh Amendment bars suits against a state in federal court unless that state has consented to the litigation. See Papasan v. Allain, 478 U.S. 265, 276-77 (1986); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). An exception exists for suits against state officers alleging a violation of federal law and seeking injunctive relief that is prospective in nature. See Edelman v. Jordan, 415 U.S. 651, 675-77 (1974); accord Va. Office for Protection & Advocacy v. Stewart, 131 S.

Ct. 1632, 1639 (2011).  If  appellee is entitled to Eleventh Amendment immunity, we would lack jurisdiction.  See McGinty v. New York, 251 F.3d 84, 100 (2d Cir. 2001); see also Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ., 466 F.3d 232, 238 (2d Cir. 2006).  Ordinarily, therefore, we would reach this issue first.

However, Eleventh Amendment immunity "is a privilege which may be waived."  Gunter v. Atl. Coast Line R.R. Co., 200 U.S. 273, 284 (1906); see Gardner v. New Jersey, 329 U.S. 565, 574 (1947); Clark v. Barnard, 108 U.S. 436, 447 (1883).  Also, we have discretion to dispose of a case on a non-merits issue before considering a jurisdictional question.

Because one of the parcels is not subject to sovereign immunity, see Note 1, supra, the statute of limitations issue has to be resolved.  The district court held that Amtrak's Supremacy Clause preemption claim as to the seventh parcel, see note 1, supra, was time-barred under New York's six-year catch-all limitations period, N.Y. C.P.L.R. § 213(1) (McKinney 2004), and, by footnote, that its claims as to the six parcels already condemned were accordingly barred for the same reason.  Nat'l R.R. Passenger Corp., 978 F. Supp. 2d at 242 & n.1.

At oral argument, recognizing that the limitations issue was dispositive as to all the parcels, the state urged us to exercise our discretion to reach the statute-of-limitations issue

without deciding whether the suit is barred by sovereign immunity. See Tr. of Oral Arg. at 21:2-7.  In view of our disposition of the limitations issue, we may treat the state's suggestion as a waiver of the immunity issue for purposes of this appeal.

The parties disagree as to the relevant statute of limitations.  The Commissioner urges upon us the 30-day appeal period under EDPL § 207 or, alternatively, the three-year period applicable to Bivens actions.  Kronisch v. United States, 150 F.3d 112, 123 (2d Cir. 1998).  Amtrak argues for a six-year period based on Niagara Mohawk Power Corp. v. FERC, 162 F. Supp. 2d 107, 137-38 (N.D.N.Y. 2001), aff'd, 306 F.3d 1264 (2d Cir. 2002).  We need not resolve this dispute because Amtrak had notice of its claims well before April 9, 2006, the date six years before it filed the present action on April 9, 2012.  The action is, therefore, barred even if the six-year limitations period applies.

Amtrak argues that various deficiencies in the NYSDOT's giving of notice of the eminent domain proceedings prevented the limitations period from beginning to run.  For example, NYSDOT failed to give Amtrak formal notice strictly according to the procedures of the EDPL and did not serve Amtrak at the address referenced in 49 U.S.C. § 24301(b).  But full compliance with formal notice requirements is not necessarily the trigger

8

1   beginning the relevant limitations period.  See, e.g., Veltri v.
2   Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 326 (2d Cir. 2004)
3   (declining to establish "mechanical rule that failure to notify a
4   claimant of her right to bring an action in court automatically
5   tolls the statute of limitations").  Rather, Amtrak's claims
6   accrued -- and the limitations clock started running -- when
7   Amtrak had reason to know of its injury.
8        "Under federal law, a cause of action generally accrues
9   'when the plaintiff knows or has reason to know of the injury
10  that is the basis of the action.'"  M.D. v. Southington Bd. of
11  Educ., 334 F.3d 217, 221 (2d Cir. 2003) (quoting Leon v. Murphy,
12  988 F.2d 303, 309 (2d Cir. 1993)).  We do not pause to determine
13  the precise date on which NYSDOT knew, or had reason to know,
14  because both possible dates are well beyond six years from the
15  date this action was brought.  In 2005, when Weld sent the email
16  informing Amtrak that NYSDOT would hold a May 2005 public hearing
17  on the subject of condemning Amtrak's land, Amtrak arguably had
18  reason to know of the alleged Supremacy Clause violation that is
19  the basis of its present claim.  Eminent domain proceedings cloud
20  title, and Amtrak concedes that it suffered not merely potential,
21  but actual injury once its property became the subject of EDPL
22  proceedings.  At the very latest, Amtrak had notice of this harm
23  in August 2005, when NYSDOT announced its findings.  See Didden
24  v. Village of Port Chester, 173 F. App'x 931, 933 (2d Cir. 2006)

(summary order). Accordingly, Amtrak had actual notice more than six years before it filed its lawsuit.

Amtrak argues that it suffered two separate injuries: the first when it learned that NYSDOT planned to take its land, and the second in 2008, when the Commissioner actually executed the takings. However, the completion of the takings was merely the final act of the intrusion on Amtrak's alleged Supremacy Clause rights that accrued in 2005 at the outset of the condemnation proceedings. See City of Plattsburgh v. Weed, 945 N.Y.S. 2d 812, 813 (App. Div. 3d Dep't 2012) (exercise of eminent domain is a single "two-step process under the EDPL"). It would make no sense to begin a limitations period -- or restart it -- when title to the real estate actually vests in the state, an act that occurs only after notice to interested parties and the requisite findings have been made. Indeed, Amtrak's proposed rule would leave the validity of a condemnation of its property in doubt for some six years after title has passed. Common sense, not to mention the record of Amtrak's failure to take any of the obvious protective measures, directs otherwise.[2] The limitations period, therefore, did not reset when NYSDOT took formal title in 2008.

---

[2] In that regard, Amtrak advances a post hoc argument to explain and avoid the consequences of its lassitude in the face of events that unambiguously portended condemnation. At oral argument, we were asked not to "impose a practical nightmare on Amtrak by inviting states to come in and do piecemeal takings . . . because it will be too much of a burden for Amtrak to come into court every time someone wants to take [its] property." See Tr. of Oral Arg. at 18. We know of no record evidence of such a "nightmare" or its purported consequences, and, even if we did, a legislative, rather than judicial remedy, would seem appropriate.

10

Similarly, the takings are not an "ongoing violation" of federal law.  Once title vested in New York, the state acquired the right to use the land by virtue of its title.  What Amtrak considers an "ongoing violation" -- New York's entry onto and use of the land -- is not even a violation of the law, because New York has legal title to it.  To hold otherwise would toll the statute of limitations indefinitely for eminent domain challenges by Amtrak.

## CONCLUSION

Amtrak's injury accrued at the very latest when the state announced its findings.  See Didden, 173 F. App'x at 933.  The judgment of the district court is, therefore, affirmed.